UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| TREVOR SWANSON, | Case No. 3:15-cv-00405-MMD-WGC |
| Petitioner, | |
| v. | ORDER |
| ROBERT LEGRAND, *et al.*, | |
| Respondents. | |

This *pro se* 28 U.S.C. § 2254 habeas petition filed by Trevor Swanson (ECF No. 4) comes before the Court for final disposition on the merits.

I.      **PROCEDURAL HISTORY AND BACKGROUND**

As set forth in this Court's order granting in part Respondents' motion to dismiss, on September 4, 2012, Swanson pleaded guilty to one count of second-degree murder in connection with the death of his girlfriend's two-year-old daughter. (ECF No. 7-6 at 2-6.)[1] The state district court sentenced Swanson to life in prison with the possibility of parole after ten years. (ECF No. 7-12 at 2-3.) Judgment of conviction was filed on October 18, 2012. (*Id.*)

Swanson did not file a direct appeal. The Nevada Court of Appeals affirmed the denial of his state postconviction petition on July 14, 2015, and remittitur issued on August 10, 2015. (ECF Nos. 7-77, 7-78.)

///

_____

[1]Citations to the record take the form of "ECF No. 7-X," where "X" is the number of the exhibit attached to Respondents' motion to dismiss (ECF No. 7). The pinpoint citations correspond to the page numbers in the Court's electronic filing system as opposed to the original page numbers of the document.

On August 7, 2015, Swanson dispatched his federal habeas corpus petition for filing (ECF No. 4). Respondents have answered the remaining grounds (ECF No. 12), and Swanson filed a reply/traverse (ECF No. 13).

## II.   LEGAL STANDARDS

### A.   AEDPA Standard of Review

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). This Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

///

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g.*, *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

///

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

### B.    Ineffective Assistance of Counsel

The remaining three claims allege ineffective assistance of counsel ("IAC"). IAC claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a ///

4

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181-84. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel and caution courts to "guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Harrington*, 562 U.S. at 105. "When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* Moreover, courts "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* (internal quotations and citations omitted).

Swanson pleaded guilty upon the advice of counsel, thus he "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he

1    received from counsel was [ineffective] . . . . and that there is a reasonable probability

2    that, but for counsel's errors, he would not have pleaded guilty and would have insisted

3    on going to trial." *Hill*, 474 U.S. at 56-57; *Lambert*, 393 F.3d at 980-81.

4    **III.    INSTANT PETITION**

5        **A.    Grounds 1(d) and 1(e)**

6        Swanson asserts in ground 1(d) that his plea counsel failed to advise him of his

7    right to appeal his conviction. (ECF No. 4 at 2.) In ground 1(e) he contends that his

8    counsel failed to file an appeal after he expressed his desire to appeal. (*Id.* at 2-3.)

9        The state district court dismissed these claims without an evidentiary hearing,

10   finding that Swanson did not allege in the petition that he asked his counsel about his

11   right to appeal, or expressed dissatisfaction with his sentence or conviction. (ECF No. 7-

12   52 at 8.) The court further observed that in Swanson's opposition to the state's motion to

13   dismiss the petition, he then changed course and inconsistently argued that he discussed

14   his appellate rights with counsel. (*Id.*)

15       The Nevada Court of Appeals also rejected these claims:

16       Swanson argues his counsel was ineffective for failing to inform Swanson
         regarding his right to a direct appeal and for failing to file a notice of appeal.
17       The duty to inform or consult with a client regarding appealing a judgment
         of conviction based on a guilty plea only arises when the defendant inquires
18       about the right to appeal or in circumstances where the defendant may
         benefit from receiving advice about the right to a direct appeal. *Toston v.*
19       *State*, [267 P.3d 795, 799 (Nev. 2011)]. The district court concluded that
         Swanson did not demonstrate he had inquired about a direct appeal or there
20       were circumstances where counsel should have advised Swanson
         regarding the appeal. Swanson for the first time on appeal argues he
21       expressed dissatisfaction with his sentence and therefore, counsel had a
         duty to file a notice of appeal. *See id.* [at 800-01]. As this assertion was not
22       raised in the petition before the district court, we will not consider it in the
         first instance on appeal.[2] *See Davis v. State*, [817 P.2d 1169, 1173 (Nev.
23       1991)], *overruled on other grounds by Means v. State*, [103 P.2d 25, 33
         (Nev. 2004)]. Accordingly, Swanson fails to demonstrate he was entitled to
24       relief for this claim.

25   (ECF No. 7-77 at 4-5.)

26   ///

27   ─────────────────────

28       [2]The Court of Appeals is correct that Swanson only purported to raise this claim in
     his opposition to the state's motion to dismiss his postconviction petition. However, the
     state district court did address the claim in its order dismissing the petition. (ECF No. 7-
     52 at 7-8.) In any event, federal grounds 1(d) and 1(e) lack merit.

6

The claims that Swanson did not appeal his convictions because counsel both failed to advise him of his right to appeal and failed to file an appeal after he expressed his desire to appeal cannot be reconciled. Swanson has not shown that the Nevada Court of Appeal's decision on these claims was contrary to or involved an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d). Accordingly, grounds 1(d) and 1(e) are denied.

### B.    Ground 2(d)

Swanson argues that his counsel rendered ineffective assistance because Swanson signed the guilty plea agreement under duress and was coerced by counsel. He claims that his counsel scared him into pleading guilty by telling him that if he did not accept the deal, counsel would "help the prosecutor convict him of first-degree murder and go for the death penalty" and further told Swanson "I believe you did it and if I could get my hands on you, I'll kick your ass, I'll rip off your arms and beat you with them" (ECF No. 4 at 5, 8).

The state-court record reflects that at the plea canvass Swanson stated that he was satisfied with his legal representation, understood the plea agreement and possible sentences, and entered the plea agreement freely of his own will. (ECF No. 7-7 at 6-9.) The state district court found that Swanson failed to allege in his postconviction petition that he "actually feared harm, to such a point that his own will was overborne, and his plea rendered involuntary." (ECF No. 7-52 at 6.) The court dismissed this claim, finding it was belied by the record. (*Id.*)

The Nevada Court of Appeals affirmed:

> Swanson argues his counsel was ineffective for coercing him into pleading guilty by threatening to physically harm Swanson. Swanson fails to demonstrate his counsel's performance was deficient or resulting prejudice. Swanson acknowledged in the guilty plea agreement and at the plea canvass that he entered his guilty plea voluntarily and he did not act under duress or coercion. Swanson also acknowledged at the plea canvass that he was satisfied with his counsel's representation of him. Swanson fails to demonstrate a reasonable probability he would have refused to plead guilty and would have insisted on proceeding to trial had he and counsel had further or different discussions regarding the guilty plea agreement.

1    Therefore, the district court did not err in denying this claim without
2    conducting an evidentiary hearing.

3    (ECF No. 7-77 at 3-4.)

4         This Court concludes that Swanson has failed to demonstrate that the Nevada

5    Court of Appeal's decision was contrary to or involved an unreasonable application of

6    *Strickland*. 28 U.S.C. § 2254(d). Federal habeas relief is denied as to ground 2(d).

7    **IV.    CERTIFICATE OF APPEALABILITY**

8         This is a final order adverse to Petitioner. As such, Rule 11 of the Rules Governing

9    Section 2254 Cases requires this Court to issue or deny a certificate of appealability

10   ("COA"). Accordingly, the Court has *sua sponte* evaluated the claims within the Petition

11   for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*,

12   281 F.3d 851, 864-65 (9th Cir. 2002).

13        Under 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has

14   made a substantial showing of the denial of a constitutional right." With respect to claims

15   rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find

16   the district court's assessment of the constitutional claims debatable or wrong." *Slack v.*

17   *McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4

18   (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate

19   (1) whether the petition states a valid claim of the denial of a constitutional right and (2)

20   whether the court's procedural ruling was correct. *Id.*

21        Having reviewed its determinations and rulings in adjudicating Swanson's Petition,

22   the Court finds that none of those rulings meets the *Slack* standard. The Court therefore

23   declines to issue a certificate of appealability for its resolution of Swanson's Petition.

24   ///

25   ///

26   ///

27   ///

28   ///

**V.    CONCLUSION**

It is therefore ordered that the Petition (ECF No. 4) is denied.

It is further ordered that a certificate of appealability is denied.

It is further ordered that the Clerk of Court enter judgment and close this case.

DATED THIS 15th day of March 2019.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE